# UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**London Division**

| | | |
|---|---|---|
| Roslyn Currier<br>*Plaintiff* | ) | |
| v. | ) | Case No. 6:12-cv-00223-DLB |
| First Resolution Investment Corp.<br>*Defendant* | ) | |

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

### I. Introduction

Plaintiff, Roslyn Currier, objects to Defendant's, First Resolution Investment Corp., motion to dismiss her complaint.

First Resolution executed on a non-final default judgment by filing a judicial lien on Ms. Currier's property in plain violation of KRS 426.720 and KRS 426.030. These statutes only allow a judgment creditor to file a judgment lien in connection with a final judgment. First Resolution's filing the judicial lien in violation of Kentucky law constitutes "tak[ing] an action that cannot legally be taken" in violation of the Fair Debt Collection Practices Act ("FDCPA").

### II. Standard of Review

> Upon a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2409, 138 L.Ed.2d

> 175 (1997). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996). A Fed.R.Civ.P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994).

*Edwards v. U.S., Dept. of Energy*, 371 F. Supp. 2d 859, 861 (W.D. Ky. 2005) *aff'd sub nom. Edwards v. U.S. Dept. of Energy*, 200 F. App'x 382 (6th Cir. 2006). Ms. Schmid's Complaint states a valid claim for violation of the FDCPA. Therefore, the Court should DENY AAL's motion to dismiss.

**III. The Fair Debt Collection Practices Act**

The purpose of the Fair Debt Collection Practices Act ("FDCPA") is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995).

**Because "the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff."** *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990) (Emphasis added). *See also Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178-179 (W.D.N.Y. 1988). This means "that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer

suffered no actual damages." *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). Moreover, "[b]ecause the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d at 33. *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 62; *Clomon v. Jackson*, 988 F.2d at 1318. Furthermore, the question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant to the FDCPA. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

**IV. Relevant Facts**

October 1, 2012: The Jackson District Court entered default judgment against Ms. Currier.

October 4, 2012: Upon receipt of the default judgment, undersigned counsel immediately drafted a motion under CR 55.02 and CR 59.05 to set aside the default judgment. (A copy the motion to set aside the default judgment is attached as an Exhibit). Undersigned counsel mailed, from Louisville, Kentucky, the motion to set aside the default judgment to the Jackson District Court and to First Resolution's counsel on October 4, 2012.

October 5, 2012: The Jackson District Court received the motion the next day and the motion was filed of record on October 5, 2012. (A copy of the docket sheet for *First Resolution Investment Corp. v. Currier*, 12-C-00080 (Jackson Dist. Ct.) is attached as Exhibit). Presumably, First Resolution's counsel, whose office is also located in Louisville, received the motion the next day as well.

October 8, 2012: First Resolution prepared a mailed a judicial lien on Ms. Currier's real estate on October 8, 2012. (A copy of First Resolution's judicial lien is attached as Exhibit).

October 29, 2012: the Jackson District Court heard arguments on Ms. Currier's motion to vacate the default judgment and granted the motion.

## V. Ms. Currier's Claims for Relief

The Complaint brings the following claims against Asset Acceptance, LLC for violation of the FDCPA:

> (a) First Resolution violated 15 U.S.C. § 1692f(1) by attempting to collect an amount on a debt not permitted by law by wrongfully filing a judicial lien on Plaintiff's real property, and thereby attempting to collect a debt by a means not permitted by law;
>
> (b) First Resolution employed unfair and/or unconscionable means to collect an alleged debt from Plaintiff in violation of 15 U.S.C. § 1692f law by wrongfully filing a judicial lien on Plaintiff's real property; and
>
> (c) First Resolution violated 15 U.S.C. § 1692e(5) law by wrongfully filing a judicial lien on Plaintiff's real property, and thereby taking an action that cannot be legally taken in attempt to collect a debt.

The Complaint states a valid cause of action for violation of the FDCPA.

The Complaint clearly states that Ms. Currier is a "consumer" within the meaning of the FDCPA and that the Chase credit account is a "debt" within the meaning of the FDCPA. Compl., ¶4; ¶8. The applicable facts clearly and plainly show that First Resolution executed on the default judgment by filing a judicial lien on a non-final judgment in violation of Kentucky law.

## VI. First Resolution Violated Kentucky Law by Filing a Judicial Lien on an Non-Final Judgment

The Jackson district court entered the default judgment against Ms. Currier on October 1, 2012. Ms. Currier mailed her CR 55.02 and CR 59.05 motion to vacate the

default judgment three days later on October 4, 2012. The motion was filed of record the next day on October 5, 2012. The timely CR 59.05 motion rendered the default judgment non final. *Personnel Board v. Heck*, 725 S.W.2d 13, 18 (Ky. App. 1986) ("[a] motion pursuant to CR 59 ... converts a final judgment to an interlocutory judgment"); *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454, 458 (Ky. 2002) ("[t]he timely filing of a CR 59.05 motion postpones finality, and a ruling on the CR 59.05 motion is necessary to achieve finality"). Consequently, First Resolution violated KRS 426.030 by filing a judicial lien on a non-final judgment.

> KRS 426.030 provides 'no execution shall issue on any judgment, unless ordered by the court, until after the expiration of ten days from the rendition thereof.' The statute contemplates a final judgment. The filing of the motion and grounds for a new trial suspended the judgment which did not become final until the motion for a new trial was overruled.

*City of Louisville v. Verst*, 308 Ky. 46, 53, 213 S.W.2d 517, 521 (1948) (citing cases).

**VII. First Resolution could not File a Judicial Lien on Ms. Currier's Property until 10 Days Elapsed from Entry of the Default Judgment**

First Resolution devotes a large portion of its memorandum in support of its motion to dismiss with argument that the language in the default judgment falls within the exception of KRS 426.030. But First Resolution completely ignores the plain language of KRS 426.720, which provides that judicial liens only attach to final judgments. But KRS 426.030 is Kentucky's general statute on execution of judgments. Because KRS 426.720 expressly applies to judicial liens, KRS 426.720 controls over any conflict between KRS 426.720 and KRS 426.030. *Light v. City of Louisville*, 248 S.W.3d 559, 563 (Ky. 2008) ("In harmonizing the conflict between two statutes that relate to the

same subject, Kentucky follows the rule of statutory construction that the more specific statute controls over the more general statute"). Therefore, KRS 426.720 governs First Resolution's right to file judicial liens.

KRS 426.720 provides in pertinent part:

> A final judgment for the recovery of money or costs in the courts of record in this Commonwealth, whether state or federal, shall act as a lien upon all real estate in which the judgment debtor has any ownership interest, in any county in which the following first shall be done . . . .

The statute clearly states that a *final judgment* constitutes a valid lien if certain steps are taken. Under Kentucky law, "a judgment becomes final ten days after its entry by the trial court." *Harris v. Camp Taylor Fire Protection District*, 303 S.W.3d 479, 482 (Ky. App. 2009) (citing CR 52.02, 59.04, 59.05). So under KRS 426.720, First Resolution could not file a judgment lien on Ms. Currier's property until the default judgment was final. So at a minimum, First Resolution could not file a judicial lien on Ms. Currier's property until at least ten days had elapsed from the entry of the default judgment.

This means that at no time between entry of the default judgment on October 1, 2012 and the trial court's order vacating the default judgment on October 29, 2012 did First Resolution have the present right to file a judicial lien on Ms. Currier's property. This fact distinguishes this case from *Wilson v. Asset Acceptance, LLC*, 864 F.Supp.2d 642 (E.D. Ky., 2012).

In *Wilson*, the debt collector, Asset Acceptance, LLC ("AAL"), sued the plaintiff, Wilson, in Lincoln District Court to collect a debt from him. *Id.* at 643. AAL moved for

and was granted summary judgment. *Id.* After the judgment was final, AAL filed a wage garnishment order on Wilson's out-of-state employer and out-of-state bank. *Id.* Both the employer and the bank refused to honor the garnishment on grounds that the Kentucky court lacked jurisdiction to enforce its orders over them. *Id.* Thereafter, Wilson sued AAL alleging that AAL's attempt to garnish his wages and bank account violated the FDCPA because the Kentucky court lacked jurisdiction over the out-of-state funds. *Id.*

The *Wilson* Court dismissed the complaint, explaining:

> Rather than threatening action intended to induce payment of a disputed debt, *Defendant merely sought to enforce a final judgment* that had already been entered in its favor. While the procedural correctness of Defendant's method of enforcement may be disputed, this clearly is not the type of debt collection activity from which the FDCPA is designed to protect consumers.

*Id.* at 644-45 (emphasis added).

Here, First Resolution was not enforcing a final judgment, but attempted to enforce a non-final judgment contrary to Kentucky substantive and procedural law. Consequently, *Wilson* is inapposite and does not support First Resolution's motion to dismiss.

**VIII. First Resolution Violated the FDCPA**

Filing a judicial lien constitutes debt-collection activity under the FDCPA. *Owens v. Hellmuth & Johnson, P.L.L.C.*, 550 F. Supp. 2d 1060 (D. Minn. 2008). (holding that a law firm collecting for homeowners association was a debt collector where it sought payment of dues that ultimately could be enforced by a lien); *Albanese v. Portnoff Law Assocs., Ltd.*, 301 F. Supp. 2d 389 (E.D. Pa. 2004) (holding that the FDCPA applies to *in rem* collection proceedings to impose a lien for municipal services on real property);

*Broughton v. Weltman, Weinberg & Reis Co., L.P.A.*, 2011 WL 1211461 (M.D. Fla. Mar. 31, 2011)

In *Broughton*, the defendant debt collector called the plaintiff, making several threats if the plaintiff did not pay an alleged debt. These threats included a threat that if the plaintiff "failed to pay the debt, the defendant would procure a lien on the plaintiff's home and . . . that a lien on the plaintiff's home would prevent a bankruptcy lawyer from helping the plaintiff avoid the debt." *Id.* at *1. The plaintiff's complaint alleged that the debt collector's threats "were harassing and caused [the] [p]laintiff a great deal of frustration, anxiety[,] and stress" in violation of the FDCPA. *Id.*

The debt collector moved to dismiss the Complaint. The *Broughton* Court denied the motion on grounds that the debt collector's threat to put a lien on the plaintiff's home constituted a legal impossibility. The Court explained:

> [T]he defendant . . . allegedly threatened to procure a lien on the plaintiff's home. Section 4, Article X of the Florida Constitution provides (in relevant part) that:
>
>> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>>
>> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of

> > one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family. . . .
>
> In this instance, the defendant's allegedly threatening to procure a lien on the plaintiff's home states a legal impossibility to the extent that the plaintiff's "home" qualifies as a "homestead" and to that extent presents no option legally available to the defendant. Thus, the plaintiff sufficiently alleges a claim for a violation of both the FDCPA. . . .

*Id.* at *3.

Here, First Resolution prepared and filed a judicial lien on Ms. Currier's property before the judgment was final in violation of KRS 426.030 and KRS 426.720. Because First Resolution had no present right to file the judicial lien on Ms. Currier's property, First Resolution violated the FDCPA by filing a judicial lien on a non-final judgment. *Broughton*, *supra*; *Carter v. Daniels*, 2004 WL 119886 (10th Cir. Jan. 27, 2004) (holding that the complaint stated a valid claim under the FDCPA when it alleged that the defendant debt collector violated 15 U.S.C. § 1692f by threatening to execute on the plaintiff's property without a present right of possession because the underlying judgment lien was not bonded as required under state law).

## IX. Conclusion and Relief Requested

For the reasons set forth above, the Court should DENY First Resolution Investment Corporation's motion to dismiss.

Respectfully submitted,

/s/ James McKenzie
**James R. McKenzie**
*Pedley & Gordinier, PLLC*
10600 Timberwood Circle
Suite 1
Louisville, KY 40223
jmckenzie@pedleylaw.com
Tel: (502) 214-3120
Fax: (502) 214-3121

**James H. Lawson**
*Lawson at Law, PLLC*
10600 Timberwood Circle
Suite 1
Louisville, KY 40223
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyclc.com

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing that the foregoing has been served, by electronic transmission of same through the Court's CM/ECF system on this 20th day of December, 2012 to:

John R. Tarter
815 W. Market Street, Suite 500
Louisville, Kentucky 40202
(502) 271-4251 Telephone
(502) 587-5454 Facsimile
jtarter@mapother-atty.com
*Counsel for Defendant*

/s/ James McKenzie
James McKenzie